**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **FELICIA PRIAH, ET AL.,** | ) | **CASE NO.1:06CV2196** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

      This matter is before the Court on the Report and Recommendation of the Magistrate Judge recommending the Court grant, in part, and deny, in part, Defendant United States of America's Motion to Dismiss the Second Amended Complaint or in the Alternative Motion for Summary Judgment (ECF 61).  For the following reasons, the Court Modifies, in Part, and Accepts and Adopts the Magistrate Judge's Report and Recommendation.  As a result, Plaintiff's Complaint is dismissed pursuant to Fed. R. Civ. P 12(b)(1) with respect to its Federal Tort Claims Act (FTCA) claims that allege negligence by Defendant in the planning, investigation and operation of the attempted rescue/arrest.  Furthermore, the Court grants summary judgment for Defendant on Plaintiff's FTCA claim for wrongful death.

1

## FACTS

Darnell Lester ("Lester"), a cooperating government witness, was kidnapped and subsequently shot during a failed rescue attempt by agents of the Federal Bureau of Investigation ("FBI"). Many of the facts found in the state[1] and federal[2] trials against Lester's kidnappers are not disputed.  However, Felicia Priah[3] ("Priah"), Plaintiff, contests some of these key facts found during the trials.

The Magistrate Judge found the following facts pertinent to the dispute at hand:

> After being arrested on drug charges in 2002, Darnell Lester became a cooperating witness for the FBI, living in Cleveland but working under control of Special Agent Brian O'Roarke, an agent in the FBI's New York Office.

> In December 2003, while not then involved in any active FBI investigation, Lester, in the company of others, drove a GMC van to an inner city food store in Cleveland.  There, he encountered some individuals who eventually, at gunpoint, overpowered Lester, forced him into the back of the van, beat him, and ordered the others out.  The released occupants quickly told various people, including Priah, that Lester had been kidnapped.

> Special Agent O'Roarke received a phone call in New York from Lester himself that night in which Lester, speaking as if O'Roarke was his "dealer," was uncharacteristically nervous and using "street jargon," which alarmed O'Roarke. After reporting the incident to superiors, O'Roarke was able to re-connect with Lester and concluded, on the basis of yes-and-no questions, that Lester could not speak freely and so was probably kidnapped and being held for a ransom of either drugs or money.  (ECF #61; *see also* Mag. Rep. at 3.)

Throughout the night, Lester was in contact with Special Agent O'Roarke.  O'Roarke informed the Cleveland FBI and plans were made to engage a SWAT team to rescue Lester.  The

---

[1] *State v. Ervin*, 2006-Ohio-4498.

[2] *United States v. Ervin*, 209 Fed. App'x. 519 (6th Cir. 2006).

[3] Priah is Darnell Lester's mother and is Administratrix of his estate.

2

FBI tried to trace Lester's cell phone signal but was unsuccessful.  The Cleveland FBI arranged to meet Lester's captors in a Rally's restaurant parking lot at 1:00 a.m on December 23, 2003.

The SWAT team and FBI met at Rally's.  The parties agree the SWAT team was not told prior to the rescue attempt that Lester would be in the vehicle.  Priah contends the FBI knew for more than one hour prior to the rescue attempt that Lester would be in the vehicle but did not relay this information to the SWAT team.  Priah states the FBI told the SWAT team Lester would not be in the vehicle.  The Magistrate Judge described what happened next:

> When agents deployed to the meeting site received word that the kidnappers' vehicle, a GMC Jimmy, had arrived at the parking lot, the SWAT team converged, boxing the Jimmy in with FBI vehicles, as agents left their cars to cover the scene with drawn weapons.  However, the kidnappers then suddenly surged the Jimmy forward, breaking the containment and, in an attempt to escape the street, drove their vehicle at high speed near Special Agent Todd Werth, one of the agents standing in the parking lot providing cover for the rescue operation.  Believing his life to be in imminent danger, a fact disputed here by Priah, Special Agent Werth fired three shots into the speeding Jimmy, one of which struck and killed Lester, who was in the front passenger seat.  (ECF #61; *see also* Mag. Rep. at 5.)

Lester's kidnappers were later charged and convicted in both state and federal court on several counts.  Priah, as representative of Lester's estate, filed a FTCA suit against the United States alleging wrongful death, negligence, gross negligence and reckless and wanton conduct by FBI agents on September 9, 2006.  In the original suit, several of Lester's children were named as Plaintiffs.  Priah conceded that Priah alone is the only proper plaintiff and the other plaintiffs named should remain "claimants" under Ohio's wrongful death statute.  On January 3, 2007, the Government filed a Motion to Dismiss the Case, or in the alternative, a Motion for Summary Judgment.  Priah filed a response in objection to the Motion to Dismiss, or alternatively, for summary judgment.   Upon the filing of a Second Amended Complaint and subsequent briefing,

3

the case was referred to the Magistrate Judge for a Report and Recommendation.  The Report and Recommendation was issued on January 25, 2008.  Both sides have filed objections and/or clarifications to the Report and Recommendation.

I..    **FEDERAL TORT CLAIMS ACT CLAIM ("FTCA")**

    A.    **STANDARD OF REVIEW**

The Government filed a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment.  The Magistrate Judge's Report and Recommendation treats Priah's claims regarding negligence in the planning, investigation and operation of the rescue/arrest under the FTCA as a Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.  The Sixth Circuit stated the standard in analyzing a motion to dismiss for failure to state a claim:

> Whether a district court properly dismisses a suit pursuant to Rule 12(b)(6) is a question of law subject to de novo review.  The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion.  The Court stated that a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegation must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  In so doing, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson* (recognizing the "accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that a plaintiff could prove no set of facts in support of his claim that would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard."

*Ass'n of Cleveland Firefighters v. City of Cleveland*, 502 F.3d 545 (6th Cir. 2007).

The Defendant's Motion to Dismiss was brought under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Fed. R. Civ. P. 12(b)(1) states in pertinent part:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter....

Fed R. Civ. P. 12 goes on to state:

If, **on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56**, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. (Emphasis added).

When challenged on a Motion to Dismiss, it is Plaintiff's burden to prove the existence of subject matter jurisdiction.  *Rogers v. Stratton Indus.,* 798 F.2d 913, 915 (6th Cir.1986). The most common method of challenging subject matter jurisdiction is on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  Such challenges are brought by two different methods: (1) facial attacks; and (2) factual attacks. *See, e.g., United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994).

"A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Walters v. Leavitt,* 376 F.Supp.2d 746, 752 (E.D. Mich 2005), *citing Scheuer v. Rhodes,* 416 U.S. 232, 235-37 (1974). "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations,.... and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. But the fact that the court takes evidence for the purpose of deciding the jurisdictional issue does not mean that factual findings are therefore

5

binding in future proceedings." *Walters* at 752.  (Citation omitted).

The Court finds the subject matter jurisdiction challenge made by Defendant is a factual attack, as this Court is asked to determine whether the policies and procedures of the United States, coupled with the particular factual circumstances, mandate a course of action by its agents or confer upon the agent discretion to accomplish the task.  Therefore, the Magistrate Judge was free to consider evidence outside the pleadings to determine subject matter jurisdiction.

B.    **GOVERNMENT IS ENTITLED TO JUDGMENT BASED
       <u>ON THE DISCRETIONARY FUNCTION EXCEPTION TO FTCA</u>**

Under 28 U.S.C. § 2674, the United States consents to be sued for certain torts committed by an employee, subject to certain exceptions, "in the same manner and to the same extent as a private individual under like circumstances."  One exception is the discretionary function exception, under 28 U.S.C. § 2680(a), which provides that if the claim is based on a federal employees performance or failure to perform "any discretionary function or duty," federal courts lack jurisdiction to hear the claim.  It is irrelevant whether there was an abuse of discretion.

In assessing whether the conduct falls under the discretionary exception, the Court first asks if the conduct involves a matter of choice for the employee.  *Berkovitz v. U.S.*, 486 U.S. 531, 536 (1987).  If the conduct does involve a matter of choice, the Court determines "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.*

Plaintiff argues, after reviewing unredacted FBI manuals and policies applicable to hostage rescue situations:

6

(1) that the FBI violated "dozens" of its written policies by either (a) proceeding with the rescue attempt without knowing for certain where Lester was, or (b) affirmatively misstating to the SWAT team before commencing the operation that Lester would not be in the kidnappers' vehicle; (2) that these policies which were allegedly violated are mandatory, such that an agent has no discretion to fail to account for the correct location of a kidnap victim or to transmit erroneous information; and (3) even if the various policies here are not mandatory and the agent's conduct here was discretionary, the discretionary function exception was not intended to shield agents from liability for "forgetting to communicate and/or inquire about the whereabouts of the [kidnap] victim."  (ECF # 61; *see also* Mag. Rep. at 14.)

The Magistrate Judge determined the applicable written policies of the FBI were not mandatory.  In *Flax v. U.S.*, 847 F. Supp. 1183, 1189 (D. N.J. 1994), the Court applied the discretionary function exception to the FBI's conduct in a kidnapping surveillance investigation. The FBI chose to terminate the rescue search because they lost the location of the hostage.  *Id.* at 1185.  Tragically, the hostage, having been shot to death, was discovered the following day. *Id.*   The Court found the FBI's "rules, regulations, statues, directives and guidelines of the FBI [did] not mandate [a] specific course of action but provide[s] the investigating agent with the option of using his or her discretion and judgment in conducting kidnapping investigations."  *Id.* at 1189.   The Government, in its response, notes that all the relevant documents in this case–the FBI's Manual of Internal Operating Guidelines (MIOG), the SWAT Team Leaders Handbook, and the SWAT Lesson Plan Manual–are not mandatory directives but "general checklists and training outlines which do not mandate any course of action but rather set forth elements and general factors to consider in SWAT operations."  (ECF # 60.)   Similar to the court in *Flax*, the Magistrate Judge found that applicable directives in place, regarding kidnapping and hostage rescue situations, fall within the discretion of an FBI employee.  The Magistrate Judge held the MIOGs and related manuals and handbooks at issue were not mandatory but are discretionary based on the relevant precedent and the language of the manuals themselves.

7

## C. OBJECTIONS TO THE REPORT AND RECOMMENDATION

Plaintiff and Defendant timely filed objections to the Report and Recommendation of the Magistrate Judge.  A District Judge shall make a *de novo* determination of those portions of the Magistrate's Report and Recommendation to which objection is made. 28 U.S.C. § 636(b)(1). A District Judge may accept, reject, or modify, in whole or in part, the recommendations made by the Magistrate Judge. *Id.* "Any party that desires plenary consideration by the Article III judge...need only ask." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). Defendants timely filed their Objections so they are entitled to a *de novo* review of the Magistrate Judge's recommendations.

Plaintiff raises several objections to the Magistrate Judge's Report and Recommendation. First, Plaintiff contends the Magistrate Judge misapplied relevant case law on the discretionary function exception to the FTCA.  Second, Plaintiff contends the Magistrate Judge failed to analyze in any meaningful way the contested MIOGs. Rather than dissecting and discussing each contested MIOG, Plaintiff argues the Magistrate Judge made a conclusory judgment that the MIOGS were not mandatory in spite of relevant case law to the contrary.  The Magistrate Judge made the same determination on the FBI's SWAT Team Leader Handbook and other FBI manuals.  Also, Plaintiff contends the Magistrate Judge improperly recommends summary judgment in favor of Defendant when evidence exists creating a genuine issue of fact that the use of deadly force was improper.  Particularly, the Magistrate Judge, according to Plaintiff, gives preclusive and binding effect to findings of fact in the criminal trials of the kidnappers when no such preclusive effect can be made when there exists no privity of parties.

Defendant made limited objections to correct what it considers obvious errors in the Magistrate Judge's Report and Recommendation.  First, the Report recommends Defendants

8

Motion be "denied in part and granted in part." However, Defendant argues the body of the Report clearly recommends granting Defendant's Motion on all claims. Further, the Defendant objects to the Magistrate Judge's statement that the FBI attempted to trace decedent's cell phone signal for "nearly a day." Rather, the entire operation from the first time decedent contacted the FBI at 9:00 PM on December 22 to the actual SWAT team intercept, occurring on December 23 around 1:00 AM, took approximately four hours. Also, the Magistrate Judge granted summary judgment on Plaintiff's claim of individual liability of special agent Werth when no such claim was ever raised by Plaintiff.

## II.      LAW and ANALYSIS

As a threshold issue, the Court adopts the Defendant's suggested modifications to the Magistrate Judge's Report and Recommendation. The Court finds the Magistrate Judge intended to grant relief on all claims sought by Defendant and the Court modifies the Report and Recommendation accordingly. The Court also modifies the Report and Recommendation to show that no claim of individual liability of Agent Werth was made by Plaintiff. Also, the Court modifies the Magistrate Judge's Report and Recommendation to correct the discrepancy on pages 18 and 26 as to the basis for the Magistrate Judge's recommended dismissal. Because the analysis and conclusion of the Magistrate Judge on Plaintiff's FTCA claim was based on a lack of subject matter jurisdiction due to the discretionary function exception, the Court finds the Magistrate Judge's Report and Recommendation recommending dismissal is based on lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and not failure to state a claim under Fed. R. Civ. P. 12(b)(6).

### A.  The Magistrate Judge's  legal standard

9

The United States Supreme Court has developed a two-prong test to govern the application of the discretionary function exception. First, the conduct must involve "an element of judgment or choice." *U.S. v. Gaubert,* 499 U.S. 315, 322, (1991); see also *Berkovitz v. U.S.,* 486 U.S. 531, 536 (1988). "In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee. This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz* at 536.  "Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.*  Second, the Court must determine "whether that judgment is the kind that the discretionary function exception was designed to shield." *Gaubert,* 499 U.S. at 322-23; *Berkovitz,* 486 U.S. at 536. "The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy." *Id.* at 537.  "[T]he purpose of the exception is to 'prevent judicial second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' " *Gaubert* at 323.

Plaintiff contends the Magistrate Judge added a proximate cause prong to the Berkovitz discretionary function test requiring Plaintiff demonstrate a causal connection between the alleged non-discretionary conduct and Plaintiff's injury.  In his Report and Recommendation, the Magistrate Judge, at pages 12-13, properly articulated the standard of review and requirements for determining whether a discretionary function exception exists.  However, at page 15 of the Report and Recommendation, the Magistrate Judge stated, " as to the initial step - identifying the government action that caused the harm complained of..."  Again, at page 16 of the Report and

10

Recommendation the Magistrate Judge stated, "....I am not convinced that Priah has satisfied the first requirement for a discretionary function analysis to apply here: identifying a governmental action that caused the harm complained of."  The Magistrate Judge held that the two prong test in *Berkovitz* in practice involves a third step; identifying the injurious conduct.  Plaintiff is correct that *Berkovitz* imposes no proximate cause prong.   To hold Defendant liable under the FTCA,  Plaintiff must identify some nondiscretionary tortious conduct by the Defendant or its agents which caused the complained of injury. See 28 U.S.C. §1346(b).  However, the analysis of whether the identified conduct proximately caused Plaintiff's injury should not be addressed until the Court first determines whether the identified conduct was discretionary because the proximate cause analysis applies to the merits of the claims while the discretionary nature of the conduct applies to the Court's subject matter jurisdiction to hear the claims.  The Court interprets the Magistrate Judge's Report to mean courts must identify the conduct of the Defendant that is the basis of the claim.  It does not mean a court may engage in a proximate cause analysis in the course of its discretionary function analysis.  Therefore, the Court concurs with the Plaintiff that there is no proximate cause component in a discretionary function analysis under the FTCA and the Court will not consider such analysis in determining Defendant's discretionary function defense.

### B.  The Magistrate Judge Improperly Determined the MIOGS and Manuals Were Not Mandatory

Plaintiff contends the Magistrate Judge erred in finding the MIOGS, handbooks and manuals in question were not mandatory, claiming a plain reading of the above and applicable case law demonstrate they are mandatory.

11

The Court finds the Magistrate Judge properly considered the applicable MIOGS, handbooks and manuals and properly held that under federal case law criminal law enforcement decisions when discretionary, are immune from judicial scrutiny.  The Magistrate Judge cited a federal district court case out of Florida that itself cited numerous decisions around the country supporting the Magistrate Judge's conclusion.  The Magistrate Judge then discussed the applicable FBI manuals and policies "read in their entirety" as conferring discretion upon agents. The Magistrate Judge further stated, " the individual elements of these manuals cited by Priah do not, and could not, standing alone and with no relationship to other objectives and circumstances, constitute binding, mandatory injunctions on agents."  The Court finds the Magistrate Judge purported to have reviewed all the relevant material and his failure to recite each of the alleged 41 mandatory clauses of FBI manuals, handbook and MIOGS does not mean they were not considered in his analysis.

The Court also finds the applicable MIOGS, handbook and manuals lack imperative language.  The terms "must", "shall" "will" and similar commands are not found in the applicable regulations.  Nor can Plaintiff cite to case law, regulations or codes demonstrating the above are mandatory.  In fact, many of the policies or regulations Plaintiff alleges are mandatory contain express language to the contrary.  For example, Plaintiff contends FBI SWAT Team Leader Handbook under a section titled, "Emergency Assault Plan (EAP)" "mandates the location of the hostage (Darnell Lester) is specifically required to be known by the SWAT Team and included in the Emergency Assault Plan." (Plaintiff Objection at 4).  However, the checklist contains no such reference to the hostage's location.  Also, the EAP section states its development is continuously modified as additional intel becomes available.  The purpose of the

12

EAP is for crisis situations and states the EAP lacks contingency planning, preparation, rehearsal and full tactical capabilities and presents extremely high risk to hostages, subjects and agents. Further, it states that among the elements of a good EAP are its "flexibility." Later, it allows for modification of the EAP "as additional intel develops." Any planning that requires flexibility must necessarily require discretion. Finally, Plaintiff points this Court to no regulation, caselaw or code demonstrating that the FBI SWAT team leader handbook is mandatory.  Plaintiff only refers to one MIOG in his Objections and that MIOG is merely a checklist under the title SWAT Tactical Operation Center (TOC), with no mandatory language one way or the other.  (It appears Plaintiff mislabeled his Exhibit but the Court was unable to find in his exhibits the relevant MIOG section.  What Plaintiff alleges is in the MIOG is not found in the Exhibit he cites for reference.)  Therefore, the Court concurs with the Magistrate Judge's Report and Recommendation finding that the relevant MIOG, handbook and manual are not mandatory and therefore, the Defendant's agents were granted discretion in planning and carrying out the operation that led to Plaintiff's decedent's demise.

## C.  The Magistrate Judge Never Considered the Public Policy Analysis Prong of a Discretionary Function Analysis

Contrary to Plaintiff's assertion, the Court finds the Magistrate Judge expressly determined the FBI's investigation, planning and commencing the rescue/arrest efforts are the "very definition of a discretionary decision and the very essence of many law enforcement actions. It is the very thing the discretionary function exception was intended to protect from after-the-fact second guessing..." (R & R p.16.). In support, the Magistrate Judge cited to *Pooler v. United States*, 787 F.2d 868, 871 (3rd Cir 1986) which held, "Congress did not intend to

provide for judicial review of the quality of investigative efforts." This Court finds the actions of the FBI agents in investigating, planning and commencing the rescue/arrest were unquestionably in furtherance of public policy considerations; namely, the apprehension of criminal suspects engaged in unlawful activities and the rescue of a kidnapped individual.

Because the decisions made regarding Lester's situation were discretionary and involved the agents' judgment, the Court finds it lacks subject matter jurisdiction to hear claims of negligence in the planning, investigation and operation of the attempted rescue/arrest.

### III.    FTCA WRONGFUL DEATH CLAIMS UNDER OHIO LAW

#### A.    SUMMARY JUDGMENT STANDARD OF REVIEW

Summary Judgment, pursuant to Rule 56(c) of the Federal Rules of Procedure, is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The moving party has the burden to show that no genuine issue of material fact exists:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portion of "the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  "A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party pursuant to Federal Rule of Civil Procedure 56(e): "If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). In deciding this motion, "the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party." *Id.* Summary Judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995).

**B.** **GOVERNMENT IS ENTITLED TO SUMMARY JUDGMENT ON THE OHIO WRONGFUL DEATH CLAIMS**

As the Magistrate Judge correctly concluded, liability for any tort, including wrongful death under the FTCA, is determined by the law the place where the act or omission giving rise to the claim occurred. *Harris v. United States,* 422 F.2d 322, 326-27 (6th Cir. 2005). The Sixth Circuit, in *Ewolski v. City of Brunswick*, 287 F.3d 492, 517 (6th Cir. 2002), articulated the standard of review for cases alleging wrongful death by employees of a political subdivision in Ohio:

> [A]s employees of a political subdivision [in Ohio], the individual defendants are entitled to statutory immunity unless their "acts or omissions were with malicious purpose, bad faith, or in a wanton or reckless manner." The standard for recklessness employed by Ohio courts holds that "[t]he actor's conduct is in reckless disregard for the safety of others if . . . such risk is substantially greater than that which is necessary to make his conduct negligent."

A recklessness standard is applied to Special Agent Werth's actions to determine if his conduct was reasonable. The Magistrate Judge assessed Special Agent Werth's conduct and determined

15

his decision to fire at the kidnappers' vehicle was reasonable under the circumstances.  As a result, the Magistrate Judge recommended the Government be granted summary judgment with respect to Plaintiff's FTCA wrongful death claim analyzed under applicable Ohio law.  After reviewing the facts undisputed by the parties, the Court agrees with the Magistrate Judge that Special Agent Werth's decision to fire at the kidnappers' vehicle was reasonable and in no way grossly negligent, wanton, malicious or reckless.

Priah argues FBI agents knew, prior to commencing the rescue attempt, Lester would be in the kidnappers' vehicle during the rescue, but either neglected to relay this information to the SWAT team, or provided the SWAT team with directly contrary information.  As the Magistrate Judge points out, any dispute in this regard is not actionable for two reasons.  First, the Government is entitled to immunity from suit as to how it investigated the abduction and planned the rescue.  Second, the proximate cause of Lester's death was the independent decision of Special Agent Werth to fire on the kidnappers' vehicle, and not the consequence of an allegedly faulty plan.  Additionally, as noted by the Magistrate Judge, Special Agent Werth's unrebutted testimony was he would have fired on the kidnappers' vehicle under the circumstances existing at the time, whether he knew Lester was inside or not.  Thus, whether or not the government is entitled to summary judgment on the wrongful death claims turns on whether Special Agent Werth's decision to fire is actionable or not.

With respect to the decision to fire on the kidnappers' vehicle, Priah maintains a factual question exists as to whether Special Agent Werth acted in bad faith, or in a wanton or reckless manner.  Priah argues that since the shots fired by Special Agent Werth hit the kidnappers' vehicle from the side and not the front, and since Special Agent Werth was unable to identify

16

any other agents in the path of the kidnappers' vehicle at the time he fired, this creates a fact

question with regard to whether his conduct was reckless.  The Magistrate Judge found Priah's

arguments contradict legal conclusions previously drawn from non-disputed facts already

established at the kidnappers' trials, including two in Ohio state courts and one in federal court,

all of which were reviewed on appeal and upheld.  While it may be true these factual issues were

previously decided in earlier trials, Plaintiff argues, persuasively, that facts developed at the

earlier trials are not binding upon Priah, as she was not a party to the first action, or in privity

with a party to the prior action.  The doctrine of collateral estoppel "prevents parties or their

privities from re-litigating facts and issues in a subsequent suit that were fully litigated in a

previous suit."  *State ex rel Scripts Howard's Broadcasting Co. v. Cuyahoga County Court of*

*Common Pleas, Juvenile Division* (1995), 73 Ohio St.3d, 1924.  The doctrine of collateral

estoppel applies when the fact or issue:

> 1.  Was actually and directly litigated in the prior action;
>
> 2.  Was passed upon and determined by a court of competent jurisdiction;
>
> 3.  When the party against whom collateral estoppel is asserted was a party or
>
>     or in privity with a party to the prior action.

*Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183; *Rizvi v. St. Elizabeth Hospital Medical*

*Center* (146 Ohio App.3d 103, 108) (Ohio App. 7th Dist. 2001).  Neither Priah, nor her decedent

Lester, were parties to, or in privity with, any of the parties in the earlier criminal cases against

the kidnappers, nor was the FBI.  As such, Defendant cannot prove prong three of the collateral

estoppel doctrine, and although the facts established at previous trials are persuasive, they are

17

not binding on Plaintiff.

Nonetheless, the Court's finding that collateral estoppel does not apply does not dispose of Plaintiff's argument that a genuine issue of material fact exists with regard to whether Special Agent Werth's actions were reckless.  First, although Plaintiff argues Special Agent Werth should not have exited his vehicle, there is no duty imposed by Ohio law or FBI regulations to stay in his vehicle.  Additionally, Plaintiff's argument that a fact-finder could conclude Special Agent Werth was reckless for firing the second shot (the one that allegedly killed Lester) because the kidnappers' vehicle was no longer coming at him is also without merit.  A fact-finder could not reasonably find Special Agent Werth's conduct was reckless with respect to Lester since he did not even know Lester was in the vehicle.  Further, Plaintiff's argument that the other FBI team members were not in danger is unpersuasive.  While Special Agent Werth testified he did not see other agents, he testified he knew there were 15 to 20 agents in the nearby vicinity (Werth Tr. at 593-94).  Senior SWAT Team Leader Kirwan testified he was concerned for Special Agent Werth's and the other agents' safety, and he feared agents could have been injured by the kidnappers.  (Kirwan Tr. at 19).  He also testified Werth was not the only agent who discharged his firearm.  (*Id*. at 27, 30, 35).  There is no support for Plaintiff's assertion that Special Agent Werth had a duty to stay in his vehicle, and no support for her assertion that the angle of the bullet suggests Special Agent Werth's conduct was reckless.

The "reasonableness" of a use of force should be judged from the perspective of a reasonable officer on the scene, and not by hindsight.  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  In considering whether Special Agent Werth was reasonable in his decision to use force, the Magistrate Judge looked to the standard articulated in a recent Sixth Circuit decision.  *Bing*

18

*ex rel. Bing v. City of Whitehall, Ohio*, 456 F.3d 555, 570 (6th Cir. 2006).  In *Bing*, the Court required an analysis of the totality of the circumstances as they were presented to the officer upon arrival on the scene.  *Id.*   In the case at bar, Special Agent Werth was confronted with a dangerous situation in which there were known kidnappers attempting to resist arrest by fleeing the scene in their SUV, without regard for anything or anyone in their way, while he and other law enforcement officers involved in the operation were in close proximity in the same parking lot, some without the protection of a vehicle.  Special Agent Werth's testimony that the kidnappers' SUV initially headed toward him as it broke through the containment barrier of FBI vehicles was corroborated by all of the other witnesses at the scene.  Therefore, the Magistrate Judge concluded it was reasonable for Special Agent Werth to fire on the kidnappers' vehicle in order to stop it before it injured him or one of the other team members, whose precise locations he did not know.

Although the Magistrate Judge concluded Special Agent Werth's actions were objectively reasonable, he indicated the Government is not required to meet that test in order to prevail on its motion here.  Instead, as previously indicated, the issue is whether an issue of fact remains as to whether Special Agent Werth's actions in using deadly force were grossly negligent or reckless.  The Magistrate Judge concluded not only was Special Agent Werth's conduct reasonable, but he cannot, as a matter of law, be found reckless or grossly negligent.  There is no evidence Special Agent Werth displayed a reckless disregard for the safety of others in making a discretionary decision to fire upon the vehicle.  Even if a fact-finder could conclude Special Agent Werth could have decided not to fire, his conduct still would not rise to a level above mere negligence.  Priah has offered no evidence Special Agent Werth acted in bad faith or

19

wantonly; therefore, the Court must accept the Magistrate Judge's decision to grant summary judgment to the Government with respect to the Ohio wrongful death claims.

The Court notes that the Magistrate Judge limited discovery in this case after briefing by the parties.  After issuing his ruling, Plaintiff failed to object to the Magistrate Judge's limitation of discovery and has not moved under Fed. R. Civ. P. 56(f) for additional discovery to respond to the summary judgment motion.

This Court also finds the evidence before it does not establish that any FBI agent knew with any degree of certainty that Lester would be in the vehicle.  Agent Werth testified, "we had no real specific information.  It went back and forth where the victim was. Again, we didn't have a good handle or very specific information on where he was, and that was more of our problem than anything. I believe at that point in time the indications were that he was not going to be in the vehicle."  (TR 587-88).  No agent testified they knew with certainty Lester was going to be in the vehicle.  At the time of the rescue/arrest attempt it was nighttime and raining.  Though the testimony of Agent Werth indicates he shot at the escaping suspect vehicle through the driver side window, his unrebutted testimony is that initially the vehicle was headed towards him; a fact upheld by the Sixth Circuit in *United States v. Ervin*, 209 Fed App'x. 519, 521 (6th Cir. 2006) ("...Ervin's attempt to run down the FBI agent caused the agent to shoot in self-defense.") Furthermore, Special Agent Werth testified he feared for the safety of other agents on the scene when the suspect vehicle broke containment and attempted to leave the scene.  While it is true he testified he did not see any other agents at the time he shot he did testify he knew there were 15 to 20 agents in the area conducting the stop and when the vehicle broke containment, "he was a threat to me and also to other agents in the area." (TR 637).  Werth testified that before the stop

20

they were briefed that an individual was kidnapped who had been cooperating with the FBI and there were five or six individuals involved in the kidnapping who were armed at least at the time of the kidnapping. (TR 582-83).  It was sketchy at the time where the individual would be and the SWAT team traveled to different locations based on the incoming information.  (TR 584-85).  Given the totality of these circumstances, the Magistrate Judge correctly determined Special Agent Werth's use of deadly force was not unreasonable.

The Magistrate Judge and Government also make a compelling proximate causation argument.  The proximate cause of Lester's death was not a policy or procedure of the FBI, but rather, the decision by Special Agent Werth to fire on the kidnappers' vehicle when it came toward him, as he felt himself and other agents to be in danger.  *Ervin*, 209 F. App'x at 521.  As a result, Lester's death was not caused by an FBI policy or procedure or failure to communicate the whereabouts of Lester.  Additionally, Special Agent Werth testified his decision to fire at the vehicle would not have changed had Special Agent Werth known Lester was inside the vehicle.  Therefore, the Government's Summary Judgment motion is granted because no genuine issue of material fact exists.

**IV.**    **CONCLUSION**

For the foregoing reasons, the Court ACCEPTs and ADOPTS, with modification, the

Magistrate Judge's Report and Recommendation dismissing Plaintiff's Second Amended

Complaint.

IT IS SO ORDERED.

January 27, 2009                              S/Christopher A. Boyko
Date                                         CHRISTOPHER A. BOYKO
                                             United States District Judge
Nunc pro tunc  9/30/08

22